# IN THE COURT OF APPEALS OF IOWA

No. 21-1263
Filed December 21, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL DOUGLAS AHRENHOLZ,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, DeDra Schroeder, Judge.

Michael Ahrenholz appeals the sentence imposed upon his guilty plea to lascivious acts with a child. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

R.A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BLANE, Senior Judge.**

Michael Ahrenholz appeals his prison sentence arguing the county attorney breached the plea agreement by not advocating for a suspended sentence and undermined the agreement by introducing victim impact statements that requested a sentence different than the plea agreement, and the sentencing judge considered unproven and unadmitted facts. He further complains he was not given copies of the victim impact statements in advance of sentencing. Based upon our review, we find the prosecutor did not undermine the plea agreement with the victim impact statements but did violate the agreement by failing to advocate adequately for its adoption by the court. We find no other error in the proceeding. We therefore vacate the sentence and remand to the district court for resentencing before a different judge.

## I.    Background facts and proceedings.

The State filed a trial information charging Ahrenholz with Count I, sexual abuse upon a child under the age of twelve, a class "B" felony in violation of Iowa Code sections 709.1, 709.3(2), and 903B.1 (2020); Count II, lascivious acts with a child, a class "C" felony in violation of Iowa Code sections 709.8(1)(a)[1] and 903B.2; and Count III, indecent exposure, a serious misdemeanor in violation of Iowa Code

---

[1] That section provides the following:

> 1. It is unlawful for any person sixteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:
> a. Fondle or touch the pubes or genitals of a child.
> . . . .
> 2. a. Any person who violates a provision of this section involving an act included in subsection 1, paragraph "a" through "c", shall, upon conviction, be guilty of a class "C" felony.

sections 709.9 and 903B.2.  Ahrenholz entered a written guilty plea to Count II.[2]

The plea agreement stated:

> Count II: Lascivious Acts with a Child, Class "C" Felony
> **Each party can make their own recommendations**
> The State would recommend as follows:
> o   A term not to exceed 10 years in prison; **fully suspended**
>        3–5 years probation to the Department of Corrections
>        $300 probation enrollment fee
> o   $1375 fine + 15% surcharge, **fully suspended**
> o   Lifetime Sex Offender Registration
> o   $250 civil penalty under the Sex Offender Registration
> o   Special Sentence under 903B.1
> o   $100 sexual assault surcharge
> o   Restitution, if any.
> o   No contact order for 5 years
>        Count I, Sexual Abuse in the Second Degree, Class "B" Felony
> Dismiss with costs assessed to Defendant.
>        Count III Indecent Exposure, Felony
> Dismiss with costs assessed to Defendant.

The plea form also provided:

> The undersigned has further been advised by his counsel that any
> recommendation of the prosecuting attorney and his attorney are not
> binding upon the court; that sentencing is solely within the discretion
> of the judge entering the sentence; and he may be sentenced up to
> the maximum provided by law.

The written guilty plea contained the following factual basis: "I, MICHAEL DOUGLAS AHRENHOLZ, hereby admit and state that I did in Floyd County, on or about calendar year 2019 did fondle or touch the pubic area of a minor child in her groin area on top of her clothing."

---

[2] The court permitted the guilty plea to the felony to be in writing and without an in-court plea colloquy on the record pursuant to an Iowa Supreme Court supervisory order establishing protocols during the COVID-19 pandemic.

The district court accepted the written guilty plea and ordered a presentence investigation report (PSI).[3] The PSI, consistent with the plea agreement, also recommended a suspended ten-year sentence, imposition of all fines, surcharges, and fees but no recommendation for suspension and five years' probation. Before the sentencing hearing, Ahrenholz timely filed his corrections to the PSI that he had been diagnosed and was being treated with medications for mental health conditions, and that he had worn an alcohol scram bracelet establishing no alcohol consumption during the pendency of the case.

The court held the sentencing hearing in person. The judge indicated on the record having reviewed the PSI. Counsel for the State stated likewise. Defense counsel also stated on the record that he had reviewed the PSI with Ahrenholz, he had no corrections, and that the court could rely on it in imposing judgment. The court then inquired if there would be victim impact statements. The prosecutor indicated there were, and Ahrenholz's wife and mother of the victim orally presented the first statement.[4] A second, short victim impact statement from Ahrenholz's stepson, J.R., was read by the victim advocate.[5] The victim, B.R., then orally presented her statement. Each of the victim statements requested that the court sentence Ahrenholz to incarceration.

Following the victim impact statements, the court asked for the State's sentencing recommendation. The assistant county attorney responded:

---

[3] The guilty plea was not conditioned on the court accepting the plea agreement. *See* Iowa R. Crim. P. 2.10(3).

[4] Under Iowa Code section 915.10(3), a victim is defined to include "immediate family members of a victim" who was under age eighteen at the time of the offense.

[5] J.R. is B.R.'s brother.

Your Honor, this is pursuant to a plea agreement with the defendant. And pursuant to that plea agreement, Counts 1 and Count 3 of the Trial Information would be dismissed with court costs assessed to the defendant. The defendant has entered a plea of guilty to the charge in Count 2, that being lascivious acts with a child, a class "C" felony.

The agreement between the parties is that each party may make its own recommendation for sentencing. The State's recommendation is for a term not to exceed 10 years in prison, with that prison term being suspended; that the defendant be placed upon probation for a period of three to five years to the Department of Correctional Services; that he be required to pay the $300 probation enrollment fee; that a fine in the amount of $1375 plus the 15 percent surcharge be fully suspended.

The State believes that this conviction would require the defendant to be placed on the lifetime sex offender registration. There would be a $250 penalty related to the sex offender registration. There would also be the special sentence come into play under section 903B.1 of the Iowa Code.

The defendant would also be ordered to pay a $100 sexual assault surcharge. The defendant would also be required under probation to pay restitution.

I believe there is a statement of pecuniary damages filed in this matter. I believe there may also be—I know I'm seeing a specific provision in regard to counseling statements with respect to the two children. I believe the amount was $425 each.

And also, the State would be requesting a no contact order being entered here at the time of sentencing for an additional five years. And I believe that no contact order would be related to [B. R.]. I believe that may have been the initial no contact order as well.

The court then asked for the defense's sentencing recommendation. Defense counsel in a lengthy statement emphasized the plea agreement was for a suspended sentence that was also the recommendation in the PSI. The victim impact statements were not challenged. Counsel concluded:

I'd ask the Court to join with the government and myself and adopt the PSI, which makes the same independent recommendation, and sentence him as provided in the PSI and as set forth by the County Attorney's Office, and that he be given a suspended sentence, that he be granted probation under the terms and conditions of the probation that would be set by the Court and required by the local probation office, subject to, of course, the additional ten-year sentence that the Court has to impose . . . .

The court then provided Ahrenholz with his opportunity for allocution. After apologizing to B.R., and indicating his conduct was the result of alcohol, Ahrenholz also requested a suspended sentence. The court then inquired: "We seem to be laying a lot of this case at the feet of alcohol. Are you telling me that alcohol is the reason this offense occurred?" Ahrenholz responded: "Correct."

The court then pronounced sentence as follows:

> The laws of Iowa require that the Court impose a sentence that best provides for rehabilitation of the defendant, protects society, and deters others from committing these type of offenses. The Court considers a lot of different factors in determining what an appropriate sentence is. I don't consider what happens as far as personal property, cars, dogs, child support. I understand all of those things are issues that may be floating, you know, with these family and this dynamics—these dynamics, but that's not part of the sentencing recommendation or part of a sentencing consideration for the Court. So while I take victim impact statements, what I have to look at, and what I do look at, is the impact of the crime that was pled guilty to on that person and those particular facts.
>
> I look at rehabilitation. Rehabilitation, I look at what's available as far as on probation and what's available through incarceration to address rehabilitation for the defendant, not only for alcohol issues, but for the lascivious acts C felony that's in front of me. *I understand you want to lay this case at the feet of alcohol, and maybe that's a contributing factor, but alcohol in and of itself, I don't think we can draw the conclusion that that leads to touching the genitals of a child.* I mean, there's obviously other—other things at play.
>
> I look at that you've been successful as far as the SCRAM and abstaining from the use of alcoholic beverages. I look at your employment, and it appears that you've been employed and regularly employed. I look at your age. You're a fairly young person.
>
> I look at your criminal history, which spans back to 1996—actually, prior to, if you look at the juvenile history in the Presentence Investigation Report—but spans back to 1996 for multiple offenses involving alcohol, drugs, interference, continuing to drive even when you didn't have a license, things of that nature. I do recognize that your criminal history ends twenty years prior to this offense that's before the Court.
>
> I look at your attitude, the statements you have to make, and everything I learn about you through these proceedings and through

> the Presentence Investigation Report. I look at the nature of the offense that's in front of me. And I look at my obligation to deter others from committing these type of offenses.
>
> All of those factors lead me to the following sentence. On lascivious acts with a child, a class "C" felony, in violation of 709.1, 709.8(1)(a), and 903B.1, I sentence you to an indeterminate term not to exceed 10 years. The Iowa Medical and Classification Center is your designated reception site. That sentence is not suspended. You'll have a $1375 fine. That will be imposed, but suspended. You have a lifetime sex offender registry requirement and a special sentence under 903B.1. You'll have a $250 civil penalty, a $100 sexual assault surcharge, and you'll pay restitution, which currently is at $516.50, which may be amended by the State within the next 30 days. A no contact order will be extended for a period of five years.

(Emphasis added). The court then sentenced Ahrenholz to a ten-year indeterminate term and did not suspend the sentence, along with a number of other criminal and civil penalties. Ahrenholz appeals his sentence.[6]

## II.     Discussion.

The supreme court as well as our court has in recent years addressed a number of cases concerning breach of plea agreements. *State v. Davis*, 971 N.W.2d 546, 553 (Iowa 2022). The supreme court handed down two such cases while this appeal has been pending. *See generally id.*; *State v. Patten*, 981 N.W.2d 126 (Iowa 2022). Their application directs our opinion here.

Ahrenholz particularly points us to *Davis*, 971 N.W.2d at 554–58, which involved the same issues, the same trial judge and the same prosecutor office. He argues the supreme court found the prosecutor breached the plea agreement in that case. He contends the same result is required here. He argues that the State

---

[6] Defendants who plead guilty have good cause to "directly appeal the State's alleged breach of the plea agreement." *State v. Davis*, 971 N.W.2d 546, 554–55 (Iowa 2022); *see also State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020).

breached the plea agreement in two ways. First, that the prosecutor at sentencing failed to advocate for the agreed upon suspended sentence. Second, that the prosecutor undermined the plea agreement when three victim impact statements were orally made by the victim, her brother, and her mother, all requesting Ahrenholz be incarcerated. The State responds that *Davis* is distinguishable on its facts and its holding does not support Ahrenholz's position. In addressing these questions, we apply prior, now familiar case law standards.

"The context of the prosecutor's performance is the paramount consideration for assessing compliance with plea agreements." *Patten*, 981 N.W.2d at 128. "The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *Id.* at 131 (quoting *State v. Boldon*, 954 N.W.2d 62, 71 (Iowa 2021)). On appeal the court is to specifically address the breach issue and not what effect the prosecutor's statement had on the sentencing court's decision. *Id.* at 129. Our review of a sentence imposed in a criminal case is for correction of errors at law. *Davis*, 971 N.W.2d at 553 (quoting *Damme*, 944 N.W.2d at 103). "We will not reverse a sentence unless there is 'an abuse of discretion or some defect in the sentencing procedure.'" *Id.* (citation omitted).

**A. Whether the State breached the plea agreement.**

As to Ahrenholz's claim that the presentation of victim impact statements at the sentencing hearing undermines a plea agreement, we find this answered by *Davis*. There, four victim impact statements were filed with the prosecutor and

attached to the PSI. The prosecution spent fifteen minutes reading the four victim impact statements into the record—two from the child victims and two from their parents. One of the child statements requested Davis be sent to prison, and the two parents' statements requested "maximum prison time." Even so, the supreme court held:

> Nothing in this opinion should be construed as undermining victims' rights. We are not holding the prosecutor breached the plea agreement by reading the victim-impact statements at sentencing. Rather, we hold the prosecutor breached the parties' plea agreement by failing to *recommend* suspended sentences as the plea agreement and our precedent required. The State does not contend otherwise.

*Id.* at 557.

In the present case, other than advising the court that victim impact statements would be made, the prosecutor did not actively participate in the presentation. The child victim, her mother and brother were present in court with a victim advocate. The victim and her mother orally presented their statements. The brother was unable to read his statement, so it was read by the victim advocate. The record also does not indicate whether the prosecutor met ahead of time with the victims, was provided or made aware of the victim impact statements beforehand, or even knew what the three would say about sentencing. Under *Davis,* we cannot find that the prosecutor intentionally undermined the plea agreement here. There is nothing to indicate an "end run" by the prosecutor in this case, as discussed in *State v. Lopez*, 872 N.W.2d 159, 178 (Iowa 2015).

We turn next to whether the prosecution failed to advocate for the plea agreement. Our supreme court has held, "We require 'strict, not substantial, compliance with the terms of plea agreements.'" *Patten*, 981 N.W.2d at 131

(quoting *State v. Fannon*, 799 N.W.2d 515, 522 (Iowa 2011)). "Violations of either the terms or the spirit of the agreement, even if seemingly minor, are intolerable and adversely impact the integrity of the prosecutorial office and the entire judicial system." *Id.* (cleaned up for readability). Later, the supreme court re-emphasized the point: "[W]e require 'strict compliance' with both the letter and spirit of plea agreements, which requires us to engage in a context-specific inquiry into the State's compliance with promises made in a plea agreement." *Id.* at 132. And "[w]here the prosecutor has agreed to make a particular sentencing recommendation, the prosecutor must do more than simply inform the court of the promise the State has made to the defendant with respect to sentencing." *Boldon*, 954 N.W.2d at 71 (cleaned up for readability). "The State must actually fulfill the promise." *Id.* (quoting *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015)).

In order to fulfill the promise, the supreme court has stated the prosecutor "cannot simply inform the court of the agreement, they must present the recommended sentences with their approval, commend the sentences to the court, and otherwise indicate to the court that the recommended sentences are supported by the State and worthy of the court's acceptance." *Patten*, 981 N.W.2d at 131 (cleaned up for readability).

Upon our review of the sentencing hearing, although the prosecutor's statement of the State's sentencing recommendation to the court is lengthy—it contains nothing more than the agreed terms—it simply informs the court of that agreement and does not recommend, commend to the court, or otherwise indicate to the court the proposed sentence is supported by the State and worthy of the

court's acceptance. We note that in *Davis*, the supreme court stated, "We do not mandate florid advocacy when the State agrees to recommend a particular sentence. But we have made clear the prosecutor must do more than simply recite the agreed recommended sentence." *Davis*, 971 N.W.2d at 557 (cleaned up for readability). Here, the prosecutor simply recited the plea agreement. Thus, we find that the State did not comply with this requirement and breached the plea agreement. Although the plea will stand, the sentence must be vacated and the case remanded to the district court for "resentencing by a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendation." *Patten*, 981 N.W.2d at 134 (quoting *Davis*, 971 N.W.2d at 558).

**B. Whether the sentencing judge considered unproven and unadmitted facts.**

Ahrenholz argues that the court considered an unproven and unadmitted fact in imposing sentence, when the court stated: "I understand you want to lay this case at the feet of alcohol, and maybe that's a contributing factor, but alcohol in and of itself, I don't think we can draw the conclusion that that *leads to touching the genitals of a child.*" (Emphasis added). *See State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (stating the court may not consider unproven criminal activity in sentencing). Ahrenholz contends that the written guilty plea contains a very specific factual admission, that he "did fondle or touch the pubic area of a minor child in her groin area on top of her clothing," and the court impermissibly considered unproven skin-to-skin contact. We find Ahrenholz's argument has no legal basis.

Our review is for an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors." *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998); *see also State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022) ("A court abuses its discretion when it relies on impermissible factors to sentence a defendant.").

An element of the charge to which Ahrenholz pled guilty requires that he did "[f]ondle or touch the pubes or genitals of a child." *See* Iowa Code § 709.8(1)(a). Lascivious acts with a child does not require skin-to-skin contact. *See State v. Alvarado*, 875 N.W.2d 713, 716–17 (Iowa 2016); *see also State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994) (considering and rejecting argument that a "sex act" requires skin-to-skin contact). By stating alcohol does not alone "lead[] to touching the genitals of a child," the court did not state or imply that Ahrenholz had skin-to-skin contact with the victim. We find the judge did not consider an unproven or unadmitted fact.

Finally, Ahrenholz faults the district court for considering "salacious and unproven allegations" in the victim impact statements. He further faults the State for not producing those statements prior to them being read at sentencing. The court must allow a crime victim to make a victim impact statement. *See* Iowa Code § 915.21(1). "[T]his may at times result in the airing of allegations which are unproven." *State v. Sailer*, 587 N.W.2d 756, 764 (Iowa 1998). Here, the victim's mother pointed to Ahrenholtz's "strong history of defying authority, antigovernment agenda, and [that he] took an arsenal of guns" from the family home as evidence of her and her children's fear of harm should he be released. Generally, we trust our district courts to "filter out improper or irrelevant evidence" when hearing victim

impact statements. *Id.* Nonetheless, "it is essential . . . that the victim be given an opportunity to fully convey the impact a crime has had." *Id.* Noting this family's particular "dynamics," the court reassured "that's not part of the . . . sentencing consideration for the court. So while I take victim impact statements, what I have to look at, and what I do look at, is the impact of the crime that was pled guilty to on that person." The court's reasoning for the sentence does not include any unproven offenses from the victim impact statements.

On the alleged lack of notice, victim impact statements can be presented live in open court (either in person or with a video or audio recording) or in writing. Iowa Code § 915.21(1)(a)–(e). If in person, the victim can present the statement or the victim's attorney or "designated representative." *Id.* If the statement is in writing, it must be filed with either the county attorney for inclusion in the presentence investigation report (PSI) or, if a PSI is not ordered, filed with the court prior to sentencing. *Id.* § 915.21(1)(a). The statements here were presented in open court, so there were no written filings to present to the defendant in advance. And nothing in the statute requires the defendant be given advance notice or copies of the written statement. The victim impact statement is not an adversarial proceeding. *See, e.g.*, *id.* § 915.21(3). So we reject Ahrenholz's complaint about the lack of notice.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**